UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
UNITED STATES OF AMERICA,      )
                              )
          v.                   )     Criminal Action No. 11-59 (RWR)
                              )
GREGORY SCOTT NELSON,          )
                              )
          Defendant.           )
_____ )

## MEMORANDUM OPINION AND ORDER

Petitioner Gregory Nelson moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that the prosecution violated his due process rights by suppressing evidence favorable to him, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  The parties have briefed and argued the issues. Because the government violated its duty to disclose all exculpatory evidence and prejudiced Nelson, Nelson's motion will be granted.[1]

## BACKGROUND

On April 11, 2011, Nelson pled guilty to traveling from Virginia to Washington, D.C. to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b).  However, Nelson now argues that his guilty plea was not knowing or voluntary because it was entered without knowledge of exculpatory evidence that the

_____

[1] Nelson also argues that his counsel provided ineffective assistance of counsel.  Because Nelson's motion will be granted as to his Brady claim, his ineffective assistance of counsel claim is not addressed, and the briefing schedule on that issue will be suspended.

government withheld.  Nelson alleges that he is a recovering
methamphetamine addict and that he traveled to Washington, D.C.
only to obtain methamphetamine.  Pet'r Gregory Nelson's Mot. to
Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255
("Pet'r Mot."), Decl. of Gregory Nelson ("Nelson Decl.") ¶ 11.

On February 3, 2011, Nelson initiated a conversation with
"DCPed" on a social networking site.  Presentence Investigation
Report ("PSR") ¶ 5; Pet'r Mot. at 13.  Unbeknownst to Nelson,
"DCPed" was Detective Timothy Palchak who was working undercover.
PSR ¶ 5, Pet'r Mot. at 13.  DCPed's online profile contained
descriptions such as "twisted minded" and "taboo," both of which
can describe a methamphetamine user.  See Pet'r Mot. at 13.
During their conversation, Nelson asked Detective Palchak: "U
looking for today?  u party?"  Id., Ex. 11 (E-mail from Julieanne
Himelstein, Assistant U.S. Attorney, to Barry Boss (Feb. 8, 2011,
2:33 p.m.) at 4).  Detective Palchak understood "party" to mean
that Nelson was asking whether Detective Palchak used
methamphetamine.  Prelim. Hr'g, 2/9/11 Tr. 41:23-42:3.  Detective
Palchak responded:  "yes, at work at moment have a perv boi . . .
meeting me at my place areound [sic] 6 or 7.  . . .  He is 12 so
if that is to [sic] young i totally understand."  Pet'r Mot., Ex.
11 at 4.  Nelson responded: "ALL VERY HOT."  Id. at 4(a).

Nelson and Detective Palchak continued to chat throughout
the day about the two of them and the boy engaging in sexual

conduct and made plans to meet later that day at a restaurant that was allegedly near Detective Palchak's apartment. Pet'r Mot., Ex. 13 at 8. While making plans, Nelson asked Detective Palchak if he was "partying tonight." Id. at 9. At 1:44 p.m., Detective Palchak responded: "looking to but cant [sic] get my T till tomorrow dont [sic] have much at all left." Id. at 4. "T" is an abbreviation for "Tina," Nelson Decl. ¶ 11, which is slang for methamphetamine, Avi Brisman, Meth Chic and the Tyranny of the Immediate: Reflections on the Culture-Drug/Drug-Crime Relationships, 82 N.D. L. Rev. 1273, 1275 (2006). Nelson concedes that he opened and read that 1:44 p.m. message.

That evening, Nelson traveled from Virginia to Washington, D.C. to meet Detective Palchak. Nelson was arrested shortly after he arrived at the restaurant. PSR ¶ 8.

On February 4, 2011, Nelson was charged with using facilities of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and appeared before a magistrate judge for an initial hearing. At the hearing, the government produced a discovery packet to defense counsel that purported to include all of the electronic communications that Detective Palchak had with Nelson. Pet'r Mot. at 21; id., Ex. 12 (2/4 Discovery Packet). On February 8, 2011, the prosecution sent defense counsel a revised discovery packet. The government concedes that its discovery productions

were intended to convey that copies of all e-mails between
Detective Palchak and Nelson were disclosed.  At a preliminary
hearing, Detective Palchak testified that the February 8, 2011
discovery packet was a "fair and accurate depiction of the
recorded e-mail chat that [he] had with the Defendant."  Prelim.
Hr'g, 2/9/11 Tr. 11:20-24; Pet'r Mot. at 23.  Detective Palchak
also asserted that he and Nelson had not directly had "any
discussion about meeting to actually ingest meth."  Prelim. Hr'g,
2/9/11 Tr. 42:5-7.  Despite the government's representations that
the discovery packets contained all recorded electronic
communications between Detective Palchak and Nelson, the
government concedes that neither the February 4, 2011 nor the
February 8, 2011 discovery packets included a copy of the 1:44
p.m. e-mail from Detective Palchak to Nelson.

    Later, the government filed a one-count information against
Nelson charging him with traveling in interstate commerce to
engage in illicit sexual conduct, in violation of 18 U.S.C.
§ 2423(b).  Nelson pled guilty to the information and was
sentenced to a 25-month term of imprisonment followed by 84
months of supervised release.

    Nelson now moves under 28 U.S.C. § 2255 to have his
conviction vacated and to withdraw his guilty plea, arguing that
the government's failure to disclose the 1:44 p.m. e-mail
violated its duty to disclose all exculpatory evidence under

Brady.  He contends that his guilty plea was not knowing and
voluntary because it was entered without knowledge that the
government failed to disclose in discovery exculpatory evidence.
Nelson further contends that had his "counsel been provided with
the exculpatory evidence, [he] would not have pleaded guilty and
would have exercised his constitutional right to trial."  Pet'r
Mot. at 2.

## DISCUSSION

Under 28 U.S.C. § 2255, a federal defendant may "move the
court which imposed [his] sentence to vacate, set aside or
correct the sentence" on the grounds that "the sentence was
imposed in violation of the Constitution or laws of the United
States, or that the court was without jurisdiction to impose such
sentence, or that the sentence was in excess of the maximum
authorized by law, or is otherwise subject to collateral attack."
28 U.S.C. § 2255.  "The petitioner bears the burden of proving
the violation by a preponderance of the evidence."  United States
v. Basu, 881 F. Supp. 2d 1, 4 (D.D.C. 2012) (citing United States
v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009)).

> Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no
> relief, the court shall cause notice thereof to be

> served upon the United States attorney, grant a prompt
> hearing thereon, determine the issues and make findings
> of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).[2]

Generally, a defendant who has pled guilty cannot later raise "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Koumbairia, 501 F. App'x 1, 3 (D.C. Cir. 2013). Instead, defendants who have pled guilty can "only attack the voluntary and intelligent character of the guilty plea." Tollett, 411 U.S. at 267.

I. USING BRADY CLAIM TO COLLATERALLY ATTACK GUILTY PLEA

Nelson contends that his guilty plea was not knowing and voluntary because he entered it not knowing that the government had failed to disclose exculpatory evidence. Citing United States v. Ruiz, 536 U.S. 622 (2002), the government contends that it is unclear whether a defendant who makes out a Brady violation may withdraw his guilty plea.

The government argues that Ruiz militates against a finding that the prosecution is required to disclose exculpatory evidence at the plea stage. However, Ruiz does not compel this conclusion. In Ruiz, the government's proposed plea offer

---

[2] Because the record in this case did not conclusively show that Nelson is entitled to no relief, a hearing was held on October 10, 2013.

specified that it would turn over to the defendant any known
information establishing the factual innocence of the defendant
and acknowledged its continuing duty to provide such information,
but required the defendant to waive her right to receive
impeachment information about witnesses.  Ruiz, 536 U.S. at 631,
633.  The Supreme Court held that "the Constitution does not
require the Government to disclose material *impeachment* evidence
prior to entering a plea agreement with a criminal defendant."
Id. at 633 (emphasis added).  But the Court found that providing
information establishing the defendant's factual innocence helped
allay concerns about the absence of merely impeachment
information.[3]  Id. at 631.

The Ruiz Court found that "due process considerations,"
including "the value of the additional safeguard," "argue against
the existence of the 'right'" to receive undisclosed Brady
impeachment evidence at the plea stage.  See id.  Specifically,
the Court found that the added value of requiring the government
to disclose impeachment evidence at the guilty plea stage was

---

[3] The Court was unwilling to characterize the impeachment
material as "critical information of which the defendant must
always be aware prior to pleading guilty" because "[t]he degree
of help that impeachment information can provide will depend upon
the defendant's own independent knowledge of the prosecution's
potential case -- a matter that the Constitution does not require
prosecutors to disclose."  Id.  Exculpatory evidence, on the
other hand, derives its value independent of the defendant's
knowledge of the prosecution's potential case.  Evidence tending
to show that a defendant is not guilty undermines proof of the
essential elements of the crime, regardless of what the defendant
knows of the prosecution's case.

limited, in part, because the plea agreement in that case
contained as a "guilty-plea safeguard[]" that the "Government
[would] provide 'any information establishing the factual
innocence of the defendant.'" Id. The Court noted that "[t]hat
fact . . . diminishes the force of [the petitioner's] concern
that, in the absence of impeachment information, innocent
individuals, accused of crimes, will plead guilty." Id. Thus,
Ruiz drew a significant distinction between impeachment and
exculpatory evidence and did not decide whether a defendant is
entitled to exculpatory evidence at the guilty plea stage.[4]

    While neither the D.C. Circuit nor the Supreme Court has
spoken on whether a defendant can withdraw his guilty plea post-
sentencing if he entered it without the government having
disclosed exculpatory evidence it possessed, the majority of
circuits to have considered the issue have held that a Brady
violation can justify allowing a defendant to withdraw a guilty
plea. See, e.g., United States v. Ohiri, 133 F. App'x 555, 562

_____

    [4] If anything, Ruiz's discussion about the importance of the
government disclosing evidence that may establish a defendant's
innocence suggests that, if confronted with the issue, the
Supreme Court would hold that a defendant has a constitutional
right to exculpatory evidence at the guilty plea stage. See
McCann v. Mangialardi, 337 F.3d 782, 788 ("Ruiz indicates a
significant distinction between impeachment information and
exculpatory evidence of actual innocence. Given this
distinction, it is highly likely that the Supreme Court would
find a violation of the Due Process Clause if prosecutors or
other relevant government actors have knowledge of a criminal
defendant's factual innocence [of the charged crime] but fail to
disclose such information to a defendant before he enters into a
guilty plea.").

(10th Cir. 2005); <u>United States v. Avellino</u>, 136 F.3d 249, 255

(2d Cir. 1998); <u>Sanchez v. United States</u>, 50 F.3d 1448, 1453 (9th

Cir. 1995); <u>White v. United States</u>, 858 F.2d 416, 422 (8th Cir.

1988); <u>Campbell v. Marshall</u>, 769 F.2d 314, 322-24 (6th Cir.

1985); <u>cf.</u> <u>McCann v. Mangialardi</u>, 337 F.3d 782, 788 (7th Cir.

2003) (finding that it is likely that the Supreme Court would

find that the government has an obligation to disclose

exculpatory evidence at the plea stage).[5]

> [Allowing] a defendant [to] argue that his guilty plea
> was not voluntary and intelligent because it was made
> in the absence of withheld <u>Brady</u> material . . . is
> sensible, because "a defendant's decision whether or
> not to plead guilty is often heavily influenced by his
> appraisal of the prosecution's case."  A waiver cannot
> be deemed "intelligent and voluntary" if "entered
> without knowledge of material information withheld by
> the prosecution."

<u>Sanchez</u>, 50 F.3d at 1453 (quoting <u>Miller v. Angliker</u>, 848 F.2d

1312, 1320 (2d Cir. 1988) (citing <u>Brady v. United States</u>, 397

U.S. 742, 756-57 (1970))); <u>see also</u> <u>Avellino</u>, 136 F.3d at 255

("The government's obligation to make such disclosures is

pertinent not only to an accused's preparation for trial but also

to his determination of whether or not to plead guilty.  The

defendant is entitled to make that decision with full awareness

of favorable material evidence known to the government.").

---

[5] <u>But see</u> <u>Matthew v. Johnson</u>, 201 F.3d 353 (5th Cir. 2000);
<u>cf.</u> <u>United States v. Moussaoui</u>, 591 F.3d 263, 285-86 (4th Cir.
2010) (suggesting that there is no right to exculpatory evidence
at the guilty plea stage but declining to resolve the issue).

By contrast, the Fourth and Fifth Circuits have suggested that a defendant does not have a right to exculpatory evidence at the plea stage because the purpose of <u>Brady</u> is to guarantee a fair *trial*. In <u>Matthew v. Johnson</u>, 201 F.3d 353 (5th Cir. 2000), the Fifth Circuit reasoned that "[t]he <u>Brady</u> rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation." <u>Id.</u> at 361. The court concluded that "[b]ecause a <u>Brady</u> violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." <u>Id.</u> at 361-62. Similarly, in <u>United States v. Moussaoui</u>, 591 F.3d 263 (4th Cir. 2010), the Fourth Circuit explained that

> [t]he <u>Brady</u> right, however, is a *trial* right. It requires a prosecutor to disclose evidence favorable to the defense if the evidence is material to either guilt or punishment, and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty.

<u>Id.</u> at 285. The court continued that "[w]hen a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." <u>Id.</u> However, because the court found that the defendant did not show that <u>Brady</u> had been violated, the court declined to resolve whether the defendant had a <u>Brady</u> right at the guilty plea stage in the first instance. <u>Id.</u> at 286-88.

As the Fourth and Fifth Circuits note, the <u>Brady</u> Court was concerned with avoiding an unfair trial. However, the Court also expressed a general resolve to ensure that justice is served. Specifically, in <u>Brady</u>, the Supreme Court explained that

> our system of the administration of justice suffers
> when any accused is treated unfairly. An inscription
> on the walls of the Department of Justice states the
> proposition candidly for the federal domain: "The
> United States wins its point whenever justice is done
> its citizens in the courts."

<u>Brady</u>, 373 U.S. at 87. A defendant who is forced to make a choice about going to trial or pleading guilty unaware that the government has not disclosed evidence "which, if made available, would tend to exculpate him," <u>id.</u> at 87-88, suffers unfair treatment unworthy of the bedrock ideal inscribed on the Justice Department walls. Moreover, precluding a defendant from raising such a <u>Brady</u> claim after a guilty plea could create a risk too costly to the integrity of the system of justice to countenance -- tempting a prosecutor to stray from that bedrock ideal and "deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." <u>Sanchez</u>, 50 F.3d at 1453. If a prosecutor did so, that would "cast[] the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice[.]" <u>Brady</u>, 373 U.S. at 88. Permitting a defendant to move to withdraw a guilty plea he entered without having been given exculpatory evidence in the government's possession comports with the purpose of the prosecution's <u>Brady</u>

obligation.  Accordingly, in light of the balance of circuit court precedent and the purpose of Brady, Nelson can assert his Brady claim to argue that his guilty plea was not knowing and voluntary.

II.  BRADY VIOLATION

Nelson contends that the prosecution violated its Brady disclosure obligations by not producing the 1:44 p.m. e-mail.  In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  As such, "[t]here are three components of a true Brady violation: [(1)] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Because Brady obligates prosecutors to assure that all exculpatory material in the possession of its investigators is identified and disclosed, suppression by either a prosecutor or an investigator can violate Brady.  See In re Sealed Case No. 99-3096 (Brady Obligations), 185 F.3d 887, 896 (D.C. Cir. 1999).

A.   Favorable evidence

Nelson argues that the 1:44 p.m. e-mail was exculpatory
because "the email establishes powerful alternative explanations
for both why Mr. Nelson was feigning interest in Detective
Palchak's proposals for sex with the minor when in fact he was
only interested in obtaining meth, and why Mr. Nelson traveled to
meet Detective Palchak on the day in question."  Pet'r Mot. at
35; see also Pet'r Gregory Nelson's Reply to the Govt.'s Brady
Resp. to Mot. to Vacate, Set Aside, or Correct Sentence under 28
U.S.C. § 2255 at 14-20 (arguing that "[f]rom both a reasonable
doubt and an entrapment perspective, the 1:44 pm email was
plainly exculpatory").  Exculpatory evidence is "that which would
tend to show freedom from fault, guilt or blame."  United States
v. Blackley, 986 F. Supp. 600, 603 (D.D.C. 1997).  Nelson pled
guilty to violating 18 U.S.C. § 2423(b).  To prevail on this
claim at trial, the government would have had to prove beyond a
reasonable doubt (1) that Nelson traveled in interstate commerce,
and (2) that Nelson's intent in traveling in interstate commerce
was to engage in a sexual act with a minor.  18 U.S.C. § 2423(b);
see also United States v. Lewis, 318 F. App'x 1, 2 (D.C. Cir.
2009).  If this case had gone to trial, the e-mail could have
cast a reasonable doubt on the claim that Nelson met Detective
Palchak to have sex with a minor.  For example, Nelson could have
used the e-mail to bolster a claim that Nelson had an alternative

motive for traveling to meet Detective Palchak -- to obtain
methamphetamine -- and, as such did not have the requisite
statutory intent.  See Pet'r Mem. at 38.[6]

While the government does not dispute that the 1:44 p.m.
e-mail, as interpreted by Nelson, is exculpatory, the government
argues that Nelson has "tortured" an "extraordinary meaning" out
of the 15-word e-mail.  Govt.'s Resp. to "Brady" Claim in Def.'s
Mot. to Vacate, Set Aside or Correct Sentence under 28 U.S.C.
§ 2255 ("Govt.'s Opp'n") at 14-15.  The government contends that
the "first-blush reading of the e-mail's meaning" is that "Det.
Palchak actually was ruling out supplying drugs to defendant,
rather than enticing him with an offer of them."  Id. at 15 n.6.
The government asserts that this is a "far more natural
interpretation of the email . . . than is the meaning given [the
e-mail] in the defendant's motion."  Id.  However, the
government's "argument . . . confuses the weight of the evidence
with its favorable tendency," Kyles v. Whitley, 514 U.S. 419, 451
(1995).  That the government could have argued that its
interpretation of the e-mail is correct does not mean that Nelson

_____

[6] Nelson adds that he could have also used the evidence to
bolster any entrapment defense he may have raised.  "[A] valid
entrapment defense has two related elements: government
inducement of the crime, and a lack of predisposition on the part
of the defendant to engage in the criminal conduct."  Mathews v.
United States, 485 U.S. 58, 63 (1988).  Nelson explains that he
could have contended that the e-mail demonstrated that Detective
Palchak induced Nelson to meet him through the "tactical use of
methamphetamine against a meth addict."  Pet'r Mem. at 43.

could have not used it as further support for his argument that he met Detective Palchak only to obtain methamphetamine.  Because the e-mail was exculpatory, the first element of a <u>Brady</u> violation is established.

B.   <u>Suppressed evidence</u>

"[T]he defendant bears the initial burden of producing some evidence to support an inference that the government possessed . . . material favorable to the defense and failed to disclose it." <u>United States v. Price</u>, 566 F.3d 900, 910 (9th Cir. 2009). "Once the defendant produces such evidence, the burden shifts to the government to demonstrate that the prosecutor satisfied his duty to disclose all favorable evidence known to him or that he could have learned from 'others acting on the government's behalf.'" <u>Id.</u> (quoting <u>Kyles</u>, 514 U.S. at 437).

Here, Nelson asserts that the government never produced the 1:44 p.m. e-mail in discovery.  Pet'r Mot. at 25.  The government does not contest Nelson's assertion that it did not produce the e-mail.  Instead, the government argues that the e-mail was not suppressed because Nelson had read the e-mail and possessed it throughout this case.  Govt.'s Opp'n at 13.

As an initial matter, "<u>Brady</u> only requires disclosure of information *unknown* to the defendant and then generally only upon request[.]" <u>United States v. Derr</u>, 990 F.2d 1330, 1335 (D.C. Cir. 1993) (emphasis added) (citing <u>United States v. Agurs</u>, 427

U.S. 97, 103, 107 (1976)).  "To state the converse, if the
defendant knows of the specific exculpatory information, Brady
does not require disclosure." United States v. Clarke, 767 F.
Supp. 2d 12, 52 (D.D.C. 2011); see also Derr, 990 F.2d at 1335
("Brady provides no refuge to defendants who have knowledge of
the government's possession of possibly exculpatory information,
but sit on their hands until after a guilty verdict is
returned.").

Nelson admits that he read the e-mail and that as late as
July 2012, the e-mail was in his e-mail inbox.  Pet'r Mot. at 25
n.15 ("The email had never been deleted from Mr. Nelson's Gmail
inbox.").  He further admits that before he pled guilty, he told
defense counsel "that he was communicating with Detective Palchak
in an attempt to obtain meth" and gave his counsel his e-mail
address and password to access his e-mail.  Id. at 21-22.

However, Nelson insists that he could not "specifically
recall the content of each and every communication with Detective
Palchak," Pet'r Reply at 7, particularly since Nelson was
communicating with a number of other people at the same time, and
had no specific recollection of the 1:44 p.m. e-mail.  Nelson
adds that he was unable to pinpoint to his trial counsel the
exact time of the communication when Detective Palchak confirmed
that he had methamphetamine, and Nelson was unable to produce any
e-mails to his counsel because he was incarcerated.  See also

Nelson Supplemental Brief 24 n.19 ("Mr. Nelson simply did not recall the emails with the requisite level of certainty . . . ."). Rather, his counsel relied on the representations of the government that the disclosed discovery included all of the communications between Detective Palchak and Nelson. Indeed, Nelson asserted at oral argument that, because of the government's affirmative representation that the discovery included all of the e-mails, Nelson came to believe that either there were no other e-mails, or that any other e-mails corroborating his claim that he was merely seeking methamphetamine had been deleted.

Moreover, Nelson's former defense counsel appeared unaware of the 1:44 p.m. e-mail. See Def.'s Mem. in Aid of Sentencing at 17 (stating that "Detective Palchak did not respond" to Nelson's e-mail asking whether Detective Palchak was going to "party" that night); id. at 17 n.39 (stating that Exhibit 8 to the defendant's sentencing memorandum, which did not include the 1:44 p.m. e-mail was, "to the best of [defense counsel's] knowledge, a complete transcript of the correspondence between Mr. Nelson and Detective Palchak"). While the government asserts that Nelson "knew of the e-mail and had it in his in-box," Govt.'s Opp'n at 14, the evidence suggests that Nelson did not recall the specific e-mail, or, more importantly, know that it was missing from the discovery packet that the government disclosed to his counsel. See Clarke,

767 F. Supp. 2d at 52 (explaining that the court should "focus on
the defendant's '*knowledge of the government's possession of
possibility exculpatory information*,' in contrast to defendant's
independent knowledge of how the offense transpired" (quoting
Derr, 990 F.2d at 1335)); see also United States v. Johnson, 592
F.3d 164, 171-72 (D.C. Cir. 2010) (finding Derr inapplicable if
the defendant does not know that the government possesses
exculpatory evidence).  The government cannot claim its Brady
obligation had been discharged since Nelson did not know that the
government had the 1:44 p.m. e-mail.  The government nonetheless
was obligated to disclose the e-mail because Brady requires
disclosure of all exculpatory material.

The government further argues that it did not suppress the
e-mail because Nelson was "'aware of the essential facts[,]'"
Raley v. Ylst, 470 F.3d 792, 804 (9th Cir. 2006) (quoting United
States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978)), needed for
Nelson to discover the e-mail "by exercising due diligence,"
Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997).  Govt.'s
Opp'n at 12-13.  However, in the D.C. Circuit, the prosecution
bears the burden of disclosing any exculpatory evidence in its
possession, and it is no response to a Brady claim that defense
counsel could have learned of the evidence through "reasonable
pre-trial preparation."  See In re Sealed Case No. 99-3096 (Brady
Obligations), 185 F.3d at 896-97 (internal quotation marks

omitted).[7]  While "[t]he appropriate way for defense counsel to
obtain [exculpatory] information [is] to make a <u>Brady</u> request of
the prosecutor[,]" <u>id.</u> at 897, <u>Brady</u> does not excuse the
government's disclosure obligation where reasonable investigation
and due diligence by the defense could also lead to discovering
exculpatory evidence.  The government was obligated to disclose
the 1:44 p.m. e-mail and it is inconsequential whether Nelson
possessed the salient facts needed to discover the e-mail in his
inbox.

Even if Nelson had a duty to exercise due diligence to find
the 1:44 p.m. e-mail, his duty would have been extinguished by
the government affirmatively representing that it had disclosed
all electronic communications between Nelson and Detective
Palchak.  "[W]hen the prosecution represents that all such
material has been disclosed[,]" it is reasonable for defense
counsel to rely on the prosecution's representation.  <u>Banks v.</u>
<u>Dretke</u>, 540 U.S. 668, 695 (2004); <u>see also</u> <u>Strickler</u>, 527 U.S. at
283-84.  That is, "defendants [do not have to] scavenge for hints
of undisclosed <u>Brady</u> material when the prosecution represents

---

[7] The "defendant due diligence rule" "excuse[s] the
prosecutors' failure to disclose exculpatory evidence on the
theory that the defendant either knew or could have known of that
evidence through due diligence."  Kate Weisburd, <u>Prosecutors</u>
<u>Hide, Defendants Seek: The Erosion of Brady Through the Defendant</u>
<u>Due Diligence Rule</u>, 60 UCLA L. Rev. 138, 141 (2012).  "The
Supreme Court has never adopted a defendant due diligence rule,"
<u>id.</u> at 147, but "[a]ll federal courts of appeal, except the Tenth
and D.C. Circuits, apply some form of the defendant due diligence
rule," <u>id.</u> at 153 & n.80 (citing cases).

that all such material has been disclosed." Banks, 540 U.S. at
695.  Here, the government represented that it disclosed to the
defense a complete set of electronic communications between
Nelson and Detective Palchak.  Thus, it was reasonable for Nelson
to rely on the government's representation and not conduct
further investigation to discover any undisclosed
communications.[8]

---

[8] Nelson further argues that Detective Palchak's testimony
at the preliminary hearing "that meth was discussed only
'indirectly,' and 'not directly' was simply untrue" and
"materially false."  Pet'r Mot. at 37.  "A conviction obtained
through the knowing use of false evidence, or through the knowing
failure to correct false evidence, violates due process."
Molina-Aviles v. District of Columbia, 824 F. Supp. 2d 4, 11
(D.D.C. 2011) (citing Napue v. Illinois, 360 U.S. 264, 269
(1959)).  To prevail on such a claim, a "defendant must show that
(1) the evidence was actually false; (2) the prosecution knew or
should have known that the testimony was false; and (3) the false
testimony was material."  United States v. Poynter, 908 F. Supp.
2d 30, 36 (D.D.C. 2012), aff'd, 509 F. App'x 2 (D.C. Cir. 2013).
Neither the D.C. Circuit nor the Supreme Court has spoken on
whether an officer's knowledge of perjured testimony should be
imputed to the prosecutors.  See Smith v. Massey, 235 F.3d 1259,
1272 (10th Cir. 2000) ("Supreme Court precedent does not clearly
establish that [an agent]'s knowledge should be imputed to the
prosecution for the purposes of Napue."), abrogated on other
grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001); see
also Briscoe v. LaHue, 460 U.S. 325, 326 n.1 (1983) ("The Court
has held that the prosecutor's knowing use of perjured testimony
violates due process, but has not held that the false testimony
of a police officer itself violates constitutional rights.").
The circuits are split on the issue.  Compare Boyd v. French, 147
F.3d 319, 329 (4th Cir. 1998) (finding that "knowingly false or
misleading testimony by a law enforcement officer is imputed to
the prosecution" for purposes of Napue) with Massey, 235 F.3d at
1272 (explaining that it "refused to impute the knowledge of a
law enforcement officer to the prosecution where there has been
an alleged Napue violation").  However, it is unnecessary to
resolve this question in order to resolve Nelson's motion.

C.  <u>Prejudice</u>

Finally, Nelson argues that had the government produced the 1:44 p.m. e-mail, he would not have pled guilty.  Generally, "[t]o satisfy the third prong -- prejudice -- the withheld evidence must be material, which means 'there must be a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  <u>United States v. Pettiford</u>, 627 F.3d 1223, 1227 (D.C. Cir. 2010) (quoting <u>United States v. Johnson</u>, 519 F.3d 478, 488 (D.C. Cir. 2008)).  "[T]he issue in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the <u>Brady</u> material, the defendant would have refused to plead and would have gone to trial."  <u>Sanchez</u>, 50 F.3d at 1454 (citing <u>Miller</u>, 848 F.2d at 1322); <u>cf.</u> <u>United States v. Taylor</u>, 139 F.3d 924, 929-30 (D.C. Cir. 1998) (stating that to demonstrate that counsel's deficient performance was sufficiently prejudicial to allow a defendant to withdraw his guilty plea, the defendant "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'" (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)); <u>United States v. Hanson</u>, 339 F.3d 983, 991 (D.C. Cir. 2003) (explaining that for a defendant to show that he had a reasonable probability that but for his counsel's mistake, he would not have pled guilty, the defendant

"does not need to show that he would have *prevailed* at trial, only that there was a reasonable probability that he 'would have *gone* to trial'" (quoting United States v. McCoy, 215 F.3d 102, 108 (D.C. Cir. 2000)).  Exculpatory evidence may be of critical importance in the defendant's decision of whether to plead guilty.  Miller, 848 F.2d at 1320 (stating that "a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of . . . information that may be available to cast doubt on the fact or degree of his culpability").  "'The defendant bears the burden of showing a reasonable probability of a different outcome.'"  Pettiford, 627 F.3d at 1227 (quoting Johnson, 519 F.3d at 488).

Nelson argues that "the 1:44 pm email is powerful evidence of an alternative motive for Mr. Nelson's words and actions consistent with his innocence" and that had the prosecution produced the e-mail "he *would* have gone to trial.  And rightly so."[9]  Pet'r Mot. at 44.  He claims that the e-mail "provide[s] a

_____

[9] The government's denigration of the weight of the evidence and its persuasiveness at trial is unavailing.  The critical inquiry for prejudice is whether the evidence is material.  As the Court explained in Kyles, "[a]lthough the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)."  514 U.S. at 434.  Ultimately, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial

compelling alternative explanation for why Mr. Nelson said what
he said to Detective Palchak and went to see him." Id. at 45.[10]

Evidence of that explanation was already available to Nelson
without the undisclosed e-mail.  Detective Palchak's online
profile identified him as a potential methamphetamine user.  The
government had also given Nelson copies of the e-mail exchange in
which Nelson asked Detective Palchak "u party?" and Detective
Palchak answered "yes[.]"  This e-mail from Detective Palchak
stating that he parties combined with Nelson's admission that he
read the 1:44 p.m. e-mail makes this a closer case on the issue
of prejudice.  Nelson could have used that evidence at trial as
probative of his alternative intent.  But that evidence tended to
show merely that Nelson's correspondent at some unspecified time
or times with unspecified frequency had used methamphetamine.
What gives the 1:44 p.m. e-mail far more probative force,
however, is Detective Palchak's confirmation that he possessed
some methamphetamine that same day, albeit a small amount, and
was looking to use it that same evening.  That tips the scale

---

resulting in a verdict worthy of confidence." Id.  Here, the
undisclosed evidence "undermines confidence" in the voluntariness
of Nelson's plea.  See id.

[10] He further argues that the e-mail is evidence of
"Detective Palchak's tactical use of methamphetamine in [this]
case as a 'lure' for Mr. Nelson . . . to come visit him[.]" Id.
at 44-45.  It is unclear how reasonably probable it is that
Nelson would have chosen to go to trial to pursue just this
defense theory since it was Nelson, not Detective Palchak, who
twice raised the question of partying or using methamphetamine.

toward the reasonable probability that had the government disclosed the 1:44 p.m. e-mail, Nelson would have taken his chances at trial to show that he was a drug abuser looking to score, and not someone intending to abuse a child.

## CONCLUSION AND ORDER

Because the prosecution suppressed exculpatory evidence before Nelson pled guilty, Nelson's due process rights were violated to his prejudice and his guilty plea was not voluntary and knowing. Accordingly, it is hereby

ORDERED that Nelson's § 2255 motion [32] be, and hereby is, GRANTED. Nelson's conviction is vacated and Nelson will be permitted to withdraw his guilty plea. The remaining briefing schedule is suspended. It is further

ORDERED that the parties appear for a status hearing on October 30, 2013 at 9:15 a.m.

SIGNED this 25th day of October, 2013.

                                   /s/
                         _____
                         RICHARD W. ROBERTS
                         Chief Judge