UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                           )
UNITED STATES OF AMERICA    )
                           )
           v.               )    Criminal Action No. 11-59 (RWR)
                           )
GREGORY SCOTT NELSON,       )
                           )
           Defendant.       )
_____)
```

## MEMORANDUM OPINION AND ORDER

Gregory Nelson pled guilty to traveling from Virginia to Washington, D.C. to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), and was sentenced to 25 months of imprisonment. Nelson's later 28 U.S.C. § 2255 motion to vacate his sentence was granted on the ground that Nelson's guilty plea was involuntary since the government violated its duty to disclose material exculpatory evidence to Nelson. The government now moves for reconsideration of the Memorandum Opinion and Order ("Opinion") granting Nelson's motion. Because the government has failed to demonstrate a clear legal error, the government's motion will be denied.

## BACKGROUND

The facts are more extensively described in the earlier Opinion. United States v. Nelson, No. 11-59 (RWR), 2013 WL 5778318 (D.D.C. Oct. 25, 2013).

Briefly, Nelson pled guilty to traveling from Virginia to Washington, D.C. to engage in illicit sexual conduct and was sentenced to a 25-month term of imprisonment. A year after he was sentenced, Nelson filed a motion under 28 U.S.C. § 2255, alleging that his guilty plea was "induced through the government's violation of its constitutional obligation to produce exculpatory evidence under Brady v. Maryland" because the government failed to disclose an e-mail ("1:44 p.m. e-mail") and that Nelson "did not receive the effective assistance of counsel." Petitioner Gregory Nelson's Mot. to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 ("Nelson's § 2255 Mot.") at 1. Nelson's Brady v. Maryland claims were fully briefed before the Opinion was issued, although briefing on his ineffective assistance of counsel claims had not concluded.

Nelson's motion to vacate his conviction and permitting him to withdraw his guilty plea was granted in the Opinion issued on October 25, 2013. Nelson, 2013 WL 5778318. The Opinion concluded that "[b]ecause the prosecution suppressed exculpatory evidence before Nelson pled guilty, Nelson's due process rights were violated to his prejudice and his guilty plea was not voluntary and knowing." Nelson, 2013 WL 5778318 at *9. The Opinion suspended briefing on the ineffective assistance of counsel claim. Id.

The government now moves for reconsideration of the
Opinion, arguing that (1) "the Order reflects an overly narrow
reading of <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), and draws
a distinction between impeachment material and other exculpatory
evidence which the text of that opinion does not support"; (2)
"the Order inappropriately relieves defendant of the
ramifications of his actual possession of the e-mail he claims
the government withheld from him"; and (3) "the Order bypasses
the well-recognized principles of <u>Brady v. United States</u>, 397
U.S. 742 (1970), and its progeny, which articulate the standard
for assessing the voluntariness of a plea."  Govt.'s Mot. to
Reconsider This Court's Order Granting Def.'s 28 U.S.C. § 2255
Mot. ("Govt.'s Mot.") at 2-3.  The government asserts that "the
court misunderstood the government's arguments and misconstrued
the holding in <u>United States v. Ruiz</u>, with the result that the
Court's ruling reflects a clear error of law."  Govt.'s Reply to
Nelson's Opp'n to the Govt.'s Mot. to Reconsider This Court's
Order Allowing Def. to Withdraw His Guilty Plea ("Reply") at 3
n.2.  Nelson opposes.  Nelson's Opp'n to the Govt.'s Mot. to
Reconsider This Court's Order Granting Def.'s 28 U.S.C. § 2255
Mot. ("Opp'n").

<u>DISCUSSION</u>

The government did not identify a rule under which it is
moving for reconsideration.  However, the government "does not

take issue with the [defendant's] suggestion that the proper
avenue for a motion to reconsider should be found in the civil
rules of procedure, rather than in this Court's criminal
jurisprudence." Reply at 2. Accordingly, the government's
motion will be assessed under Federal Rule of Civil Procedure
59(e). Id. at 3 (acknowledging that the "motion to reconsider
is properly filed under Rule 59(e) or Rule 60(b)" (citing
Ackerland v. United States, 633 F.3d 698, 701 (8th Cir. 2011));
see also Owen-Williams v. BB & T Inv. Servs., Inc., 797 F. Supp.
2d 118, 121-22 (D.D.C. 2011) ("As a general matter, courts treat
a motion for reconsideration as originating under Rule 59(e) if
it is filed within 28 days of the entry of the order at issue
and as originating under Rule 60(b) if filed thereafter."
(footnote omitted)).

        Under Federal Rule of Civil Procedure 59(e), a party may
request that a court reconsider its earlier judgment. "While
the court has considerable discretion in ruling on a Rule 59(e)
motion, the reconsideration and amendment of a previous order is
an unusual measure." City of Moundridge v. Exxon Mobil Corp.,
244 F.R.D. 10, 12 (D.D.C. 2007) (internal quotation marks
omitted). "A motion to alter the judgment need not be granted
unless there is an intervening change of controlling law, new
evidence becomes available, or there is a need to correct a

clear error or prevent manifest injustice." Id. (citing Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006)).

"[A] losing party may not use a Rule 59 motion to raise new issues that could have been raised previously." Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993); see also Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986) ("[Motions to alter or amend a judgment] cannot be used to raise arguments which could, and should, have been made before the judgment issued."). Rather, "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" Hoffman v. District of Columbia, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting Singh v. George Wash. Univ., 383 F. Supp. 2d 99, 101-02 (D.D.C. 2005)); Singh, 383 F. Supp. 2d at 101-02 (denying motion for reconsideration because "the Court considered the cases that the [defendant] now cites" and the "attempt to re-litigate this issue will not be countenanced"). A Rule 59 motion is also "not simply an opportunity to reargue facts and theories upon which a court has already ruled." New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995); see also Miss. Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. 542, 546 (D.D.C. 1991) ("[A] motion for reconsideration must address new evidence or errors of law or

fact and cannot merely reargue previous factual and legal assertions.").

I.   <u>RUIZ</u>

The government argues that permitting Nelson to withdraw his guilty plea on the basis of a <u>Brady v. Maryland</u> violation is "both inconsistent with the Supreme Court's analysis in <u>Ruiz</u> . . . and unsupported by the law" since the Court in <u>Ruiz</u> "declined to impose on the government a pre-plea obligation under <u>Brady v. Maryland</u>" and the "balance of circuit precedent <u>post</u>-<u>Ruiz</u> weighs against an extension of <u>Brady v. Maryland</u> doctrine to the plea context."  Govt.'s Mot. at 6 (internal quotation marks omitted).

The government's arguments -- that <u>Ruiz</u> should be read broadly to say that the government has few, if any, pre-plea <u>Brady v. Maryland</u> obligations, and that, post-<u>Ruiz</u>, other courts have refused to extend the <u>Brady v. Maryland</u> obligation to pre-plea situations -- were both raised and rejected previously. <u>See</u> Govt.'s Response to "Brady" Claim in Def.'s Mot. to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 ("Govt.'s Brady Opp'n") at 15-16 (arguing that <u>Ruiz</u> makes it "unclear that [a] valid <u>Brady[ v. Maryland]</u> claim justifies withdrawing [a] guilty plea"); <u>id.</u> ("Since <u>Ruiz</u>, a number of Courts have rejected defendant's argument [that he can withdraw his plea based on <u>Brady[ v. Maryland]</u> violations].");  Govt.'s Supplemental Mem. on Def.'s "Brady" Allegation, Following Oral

Argument ("Govt.'s Supp. Brady Mem.") at 15 (arguing that the Supreme Court in Ruiz "concluded that the Constitution does not require the government to disclose Brady[ v. Maryland] impeachment evidence before entering a plea agreement with a criminal defendant"); Nelson, 2013 WL 5778318, at *3-5 (finding that Ruiz did not decide whether the government has a pre-plea obligation to disclose Brady v. Maryland materials, and that the "the balance of circuit court precedent and the purpose of Brady [v. Maryland]" supported the finding that Nelson could assert his claim). While the government did not provide extensive analysis of this argument in its original briefing, a motion for reconsideration is not the appropriate time to "reargue facts and theories upon which a court has already ruled," New York, 880 F. Supp. at 38, to "raise new issues that could have been raised previously," Kattan, 995 F.2d at 276, or to otherwise "re-litigate th[e] issue," Singh, 383 F. Supp. 2d at 101–102.

In any event, the government's arguments are unavailing. The Opinion explicitly analyzed Ruiz and concluded that Ruiz "did not decide whether a defendant is entitled to exculpatory evidence at the guilty plea stage." Nelson, 2013 WL 5778318, at *3; see also Ruiz, 536 U.S. at 625 ("In this case we primarily consider whether the Fifth and Sixth Amendment require federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose 'impeachment information

relating to any informants or other witnesses.'"); id. at 628

("The constitutional question concerns a federal criminal

defendant's waiver of the right to receive from prosecutors

exculpatory impeachment material[.]").  The government contends

that pre-Ruiz cases "are of no assistance in interpreting Ruiz

because the authors of those opinions had no access to the

Supreme Court's reasoning," Govt.'s Mot. at 13-14, and that "the

Court's reliance on the cases it cited was faulty, because of a

flawed understanding of the facts of those cases and of their

precedential value post-Ruiz," Reply at 11.  However, Ruiz did

not abrogate or overrule the pre-Ruiz cases that were considered

in the Opinion.  Any reliance on the reasoning of those cases

was appropriate and not a clear legal error.  Nelson, 2013 WL

5778318, at *4-5.  Further, the government's argument that "it

is not entirely clear that the rationale of these cases supports

application of Brady v. Maryland with full force in the plea

context," Govt.'s Mot. at 14, fails to point out any intervening

change of controlling law, new evidence unavailable during the

first disposition, or a clear error or manifest injustice, and

provides no reason to reconsider the Opinion.  The government

appears merely to disagree with the analysis of the cases, which

is insufficient to trigger reconsideration.  E.g., Singh, 383 F.

Supp. 2d at 102 (finding reconsideration inappropriate because

the party's argument that the court has misconstrued case law

"has accused the court of an error of reasoning, not of apprehension").

The government also argues that the Opinion's conclusion that "Ruiz drew a significant distinction between impeachment and exculpatory evidence," see Nelson, 2013 WL 5778318, at *3, is flawed. Govt.'s Mot. at 7-8, 10. Again, the government disagrees with the reasoning of the Opinion, but does not point out a clear legal error. The Court in Ruiz specifically discussed impeachment material[1] and its particular value and relationship to a fair trial; the Ruiz Court did not broadly

---

[1] Indeed, the Court narrowed its holding even further, stating that "in the context of this agreement, the need for this information is more closely related to the fairness of a trial than the voluntariness of the plea." Ruiz, 536 U.S. at 633 (first emphasis added). If anything, this suggests that, rather than announcing a categorical rule that the government is not required to disclose any information pre-plea, an analysis of the surrounding facts and circumstances, as well as the value of the information, is required to determine if the failure to disclose affects the voluntariness of the plea.
    This implication is supported by Justice Thomas' concurrence: "The Court, however, suggests that the constitutional analysis turns in some part on the 'degree of help' such information would provide to the defendant at the plea stage, a distinction that is neither necessary nor accurate." Ruiz, 536 U.S. at 633 (Thomas, J., concurring in judgment) (citation omitted). Justice Thomas explicitly stated that Brady v. Maryland's purpose was "avoidance of an unfair trial to the accused" which was "not implicated at the plea stage" but his opinion was not joined by a single other justice. Id. (internal quotation marks omitted). The Court's opinion, therefore, may suggest that due process requires disclosure of even affirmative defense information before a guilty plea, depending on the context of the plea agreement. At the very least, the Court's opinion in Ruiz shies away from directly holding that Brady v. Maryland never applies at the plea stage.

discuss exculpatory information.  <u>Ruiz</u>, 536 U.S. at 628-30; <u>see</u> <u>also</u> <u>United States v. Moussaoui</u>, 591 F.3d 263, 286 (4th Cir. 2010) ("To date, the Supreme Court has not addressed the question of whether the <u>Brady[ v. Maryland]</u> right to <u>exculpatory</u> information, in contrast to <u>impeachment</u> information, might be extended to the guilty plea context.").  The Court in <u>Ruiz</u> also discussed the defendant's waiver of her right to receive information pertinent to an affirmative defense.  <u>Ruiz</u>, 536 U.S. at 633.  Yet, again, the Court did not broadly state that the government was not required to disclose any exculpatory information, opting instead to find that Ruiz's fast track plea agreement, which carved out specific types of exculpatory evidence that would not be disclosed to the defendant, did not violate due process.  <u>Id.</u> ("We do not believe the Constitution <u>here</u> requires provision of this information to the defendant prior to plea bargaining[,] for most (though not all) of the reasons previously stated." (emphasis added)).

The government further contends that the Supreme Court has previously rejected any distinctions between impeachment evidence and exculpatory evidence.  Govt.'s Mot. at 10.  For example, the government argues that the Supreme Court in <u>United States v. Bagley</u> "not[ed] that in the context of the government's disclosure obligations, [the] Supreme Court 'has rejected any . . . distinction between impeachment evidence and

exculpatory evidence.'" <u>Id.</u> (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985)). However, the government's quotation omits a critical word from the Court's opinion in <u>Bagley</u>: the Court "rejected any <u>such</u> distinction between impeachment evidence and exculpatory evidence." <u>Bagley</u>, 473 U.S. at 676 (emphasis added). The "any such distinction" referred to the lower court's conclusion that omission of impeachment information mandated an automatic reversal, whereas omission of exculpatory information did not require automatic reversal. <u>Id.</u> at 675-77. The Court in <u>Bagley</u> did not categorically reject all distinctions between exculpatory and impeachment evidence. <u>See</u> <u>id.</u> And the Court in <u>Ruiz</u> used the terms "exculpatory" and "impeachment" separately, rather than as identical terms. <u>Ruiz</u>, 536 U.S. at 631 (discussing the "trial-related rights to exculpatory and impeachment information in <u>Brady[ v. Maryland]</u> and <u>Giglio</u>"). The Court has not treated exculpatory evidence and impeachment information as indistinguishable, and <u>Ruiz</u> does not foreclose a <u>Brady v. Maryland</u> violation from being the basis of a claim that a guilty plea is involuntary.[2] Because <u>Ruiz</u> does

---

[2] Additionally, the concerns that animated the Court's decision in <u>Ruiz</u> are not applicable here, and due process favors allowing Nelson to assert his claim. The harm that could result from the government disclosing the 1:44 p.m. e-mail does not rise to the level of harm that the Supreme Court found in <u>Ruiz</u>. <u>See</u> <u>Ruiz</u>, 536 U.S. at 631-32. The 1:44 p.m. e-mail does not expose any witnesses to harm, nor would it disrupt any investigations. In fact, the government largely made the

disclosures that Nelson wanted in this case, but omitted the 1:44 p.m. e-mail. That the government in fact already disclosed the e-mail chain -- albeit, incompletely -- cuts against its argument that this ruling could have a "particularly onerous" burden on the government, as does the government's mischaracterization of the completeness of the discovery packet. Moreover, the government should be obligated to speak correctly when affirmatively stating what evidence it does and does not have, or what evidence does or does not exist.

Further, due process considerations favor permitting using this particular Brady v. Maryland claim as the foundation of an attack on the voluntariness of Nelson's guilty plea. While the Court in Ruiz found that a "right" to general disclosure of material impeachment information had "limited" value, the same cannot be said of the omitted exculpatory information at issue here. See id. at 629-30. The government did not merely fail to disclose Brady v. Maryland materials, but in fact concealed by its affirmative misrepresentation, Brady v. Maryland materials. The value of this additional safeguard to protect defendants from affirmative misrepresentations before a plea is entered was discussed in the Opinion, see Nelson, 2013 WL 5778318, at *5 ("[P]recluding a defendant from raising such a Brady[ v. Maryland] claim after a guilty plea could create a risk too costly to the integrity of the system of justice to countenance."), and as is discussed above, there are few adverse impacts to permitting Nelson to advance his claim.

> However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted beyond all reasonable doubt. Since Kercheval v. United States, 274 U.S. 220 (1927), this Court has recognized that "unfairly obtained" guilty pleas in the federal courts ought to be vacated.

Santobello v. New York, 404 U.S. 257, 264 (1971) (Douglas, J., concurring) (citations omitted). This affirmative misrepresentation frustrated due process, undermined the voluntariness of Nelson's guilty plea, and led to a guilty plea that was "unfairly obtained." See id.

Moreover, even if the Court in Ruiz distinguished between evidence about the defendant's factual innocence and other

not bar a <u>Brady v. Maryland</u> violation from being the premise of

Nelson's claim, there is no clear legal error that merits

reconsideration.

II.  SUPPRESSED EVIDENCE

The government revives its original argument that Nelson

"actually possessed the non-disclosed information" and thus it

could not suppress the evidence.  Govt.'s Mot. at 21-22

(emphasis omitted).  The Opinion rejected this argument, and

concluded that "[t]he government cannot claim its <u>Brady[ v.</u>

<u>Maryland]</u> obligation had been discharged since Nelson did not

know that the government had the 1:44 p.m. e-mail" and that

"[t]he government nonetheless was obligated to disclose the e-

mail because <u>Brady[ v. Maryland]</u> requires disclosure of all

exculpatory material."  <u>Nelson</u>, 2013 WL 5778318, at *7.  "A

court may properly exercise its discretion by denying a motion

for reconsideration that 'raise[s] . . . arguments for

reconsideration that the court ha[s] . . . already rejected on

the merits."  <u>McLaughlin v. Holder</u>, 864 F. Supp. 2d 134, 141

---

exculpatory information, such as information relevant to an
affirmative defense, that makes no difference here.  The
1:44 p.m. e-mail is not merely impeachment material or proof of
an affirmative defense, but goes to directly to Nelson's intent,
which is an element of the crime of which he was convicted.
While not dispositive, such information "demonstrate[s] actual
factual innocence of the offense of conviction; i.e., that
petitioner did not commit the crime of which he was convicted."
<u>United States v. Mikalajunas</u>, 186 F.3d 490, 494 (4th Cir. 1999).

(D.D.C. 2012) (quoting Capitol Sprinkler Inspection, Inc. v.
Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011)).

As is discussed in the Opinion, to establish a Brady v.
Maryland claim, the defendant must initially show that the
government possessed material favorable to the defense that the
government did not disclose.  United States v. Price, 566 F.3d
900, 910 (9th Cir. 2009).  Nelson indisputably established that
the government possessed the 1:44 p.m. e-mail, and the
government concedes that it did not disclose that evidence.
Once the defendant has met this burden, then the government must
show that "the prosecutor satisfied his duty to disclose all
favorable evidence known to him."  Id.  The government does not
disclaim knowledge that it possessed the 1:44 p.m. e-mail.
Therefore, as a Brady v. Maryland disclosure matter, the
government was required to disclose the e-mail unless it can
show that Nelson knew "of the specific exculpatory information."
United States v. Clarke, 767 F. Supp. 2d 12, 52 (D.D.C. 2011);
United States v. Derr, 990 F.2d 1330, 1335 (D.C. Cir. 1993)
("Brady[ v. Maryland] only requires disclosure of information
unknown to the defendant . . . .").  This is where the
government failed.  The record showed that Nelson's former
defense counsel was unaware of the 1:44 p.m. e-mail, that
"Nelson did not recall the specific e-mail, or, more
importantly, know that it was missing from the discovery packet

that the government disclosed to his counsel," and that the
government affirmatively represented that it had disclosed all
electronic communications between Nelson and Palchak.[3]  See
Nelson, 2013 WL 5778318, at *7.  The government's argument that
it discharged its duty to disclose Brady v. Maryland materials
because Nelson possessed the 1:44 p.m. e-mail -- despite the
government's misrepresentation that it had disclosed the entire
e-mail chain -- was explicitly rejected.  See Nelson, 2013 WL
5778318, at *7 (citing United States v. Johnson, 592 F.3d 164,
171-72 (D.C. Cir. 2010); Clarke, 767 F. Supp. 2d at 52).  This
was not a case in which a defendant with "knowledge of the
government's possession of possibly exculpatory information
. . . sit[s] on [his] hands until after a guilty verdict is
returned[,]" Derr, 990 F.2d at 1335, but rather a case in which
the government, even if inadvertently, falsely represented that
it was disclosing all of the electronic communications between
the defendant and an officer.  Nelson, 2013 WL 5778318, at *6-7.
The government's attempt to shift the burden of bearing the
consequences of its misrepresentation to the defendant was
squarely rejected, and the Opinion concluded that Nelson's

---

[3] The government argues that the reasonableness of counsel's
reliance on the government's misrepresentation requires an
evidentiary hearing.  Govt.'s Mot. at 23-24.  However, the
reasonableness of counsel's reliance was not dispositive when
the Opinion issued and is not dispositive now, and does not
require a hearing.

guilty plea did not immunize the government from the ramifications of that false representation. See id. Rather, the Opinion found that the government could not escape its obligation to disclose Brady v. Maryland materials by furnishing an incomplete discovery packet when it specifically represented the packet as complete. See id. Thus, as is discussed below, even if the government does not always have an obligation to disclose Brady v. Maryland materials, the facts of this case compel the conclusion that the government's misrepresentation improperly suppressed exculpatory materials, and such an act under any fair test cannot support the voluntariness of a guilty plea.

Whether the government's affirmative misrepresentation is also relevant to Nelson's ineffective assistance of counsel claim has no bearing on the government's obligation to disclose under Brady v. Maryland. The government's motion for reconsideration does not offer any intervening case law calling this conclusion into question, nor does it point to any binding case law that was not considered. Thus, there is no clear legal error, and the government's motion provides no reason to reconsider this aspect of the Opinion.[4]

---

[4] The government also argues that "the Court erred in the application of" the Brady v. Maryland standard. Govt.'s Mot. at 32. As this argument reiterates the government's prejudice arguments raised in its original briefing, see id. at 33-35

III. PREJUDICE

Despite analyzing Nelson's claim under Brady v. Maryland in its original briefings, the government now argues that the proper standard to use to assess prejudice is Brady v. United States, which governs the voluntariness of guilty pleas, rather than Brady v. Maryland, which governs claims involving the government's non-disclosure of favorable and material evidence.[5]

The government appears to be arguing that the Brady v. United States framework should be used in lieu of the prejudice inquiry under Brady v. Maryland. See Gov't.'s Mot. at 3, 27-28.

_____

(reiterating points that the government had "pointed out in its Supplemental Memorandum"), the government's motion on this ground will be denied. See McLaughlin, 864 F. Supp. 2d at 141.

[5] In Brady v. Maryland, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 97. To establish a Brady v. Maryland violation, the defendant must show that there was (1) favorable evidence (2) that was suppressed by the State and (3) prejudice ensued. See id.; Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

On the other hand, in Brady v. United States, the Court found that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. at 748. For a guilty plea to be constitutionally valid under Brady v. United States, the guilty plea must be "'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" United States v. McCoy, 215 F.3d 102, 107 (D.C. Cir. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)). A plea cannot be voluntary "'if it is induced by threats or misrepresentation.'" United States v. Mathis, 963 F.2d 399, 410 (D.C. Cir. 1992) (quoting United States v. Russell, 686 F.2d 35, 38 (D.C. Cir. 1982)).

It is not clear why the Brady v. United States inquiry should replace the prejudice inquiry under Brady v. Maryland. The government does not offer any binding case law holding that when a defendant seeks to withdraw his plea based on a Brady v. Maryland violation, the court must assess the claim under Brady v. United States either in place of Brady v. Maryland's prejudice inquiry or in addition to it. The government offers only a discussion of the differences between the two standards and a citation to a First Circuit case. See Govt.'s Mot. at 28-30 (citing Ferrara v. United States, 456 F.3d 278 (1st Cir. 2006)). However, in Ferrara, the First Circuit did not decide which framework to use in deciding whether the defendant could withdraw his guilty plea. See id. at 290. Instead, the First Circuit found that it was unnecessary to resolve the Brady v. Maryland question because there was a clear due process violation under Brady v. United States. Id.

The Supreme Court has not assessed all requests to withdraw guilty pleas under the Brady v. United States framework. For example, when faced with an ineffective assistance of counsel claim, the Court has used the framework articulated in Strickland v. Washington, 466 U.S. 668 (1984), rather than using Brady v. United States. E.g., Hill v. Lockhart, 474 U.S. 52 (1985). The government offers no reason to proceed under the general Brady v. United States framework rather than under the

specific framework that governs the constitutional violation
Nelson complains of, nor does the government offer case law
requiring that the court consider the factors identified by the
government as relevant to the Brady v. United States inquiry.
Govt.'s Mot. at 17.  The government also provides no reason to
combine the two inquiries.  Thus, there is no clear legal error
here in assessing Nelson's claim using the Brady v. Maryland
framework as opposed to the Brady v. United States framework.[6]

Importantly, the government acknowledges that it "did not
offer the Brady v. United States analysis in its initial
pleading or at oral argument." Reply at 18.  The government
instead argues that its "choice not to emphasize earlier the
significance of [Brady v. United States] does not negate the
importance of that decision to the issues before the Court."
Reply at 18 n.16.  However, "a losing party may not use a Rule
59 motion to raise new issues that could have been raised
previously." Kattan, 995 F.2d at 276.  "Rule 59(e) motions are
aimed at reconsideration, not initial consideration." GSS Grp.
Ltd. v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012)
(internal quotation marks omitted); see also Kattan, 995 F.2d at

---

[6] At best, a court should determine if there was a Brady v.
Maryland violation -- an inquiry that would include the
prejudice analysis -- then proceed to the separate inquiry under
Brady v. United States to determine if the plea was nonetheless
voluntary.  As is discussed below, a subsequent Brady v. United
States inquiry results in the same outcome here.

276 (affirming the district court's finding of waiver because the party did not raise the argument before judgment).  The government in its opening brief offered only a short paragraph in its "Governing Legal Principles" section stating that a defendant may not withdraw a plea unless he can "'show that the plea proceeding was tainted by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'"  Govt.'s Brady Opp'n at 8 (quoting United States v. Farley, 72 F.3d 158, 162 (D.C. Cir. 1995)).  The government did not analyze the facts under that standard, or even mention the guilty plea standard in its "Argument" section.  See id. at 11-16; see also Govt.'s Supp. Brady Mem. (omitting a discussion of the Brady v. United States standard).  Accordingly, the government has waived its argument that Nelson's claim should be assessed under Brady v. United States rather than Brady v. Maryland.  E.g., Kattan, 995 F.2d at 276; cf. Wash. Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to resolve an issue raised by the party in "a cursory fashion" with "only bare-bones arguments").

In any case, the analysis under Brady v. United States would result here in the same conclusion.[7]  Certainly, the

---

[7] The government argues that "consideration of the complete range of factors relevant to the determination of whether

Nelson's plea was voluntary . . . compels the conclusion that
Nelson's plea was voluntary, and should be reinstated."  Reply
at 19.  The government argues that "[t]his Court bypassed
consideration of these factors and linked its materiality
determination only to an assessment of how much 'probative
force' the 1:44 p.m. e-mail would have added to a potential
methamphetamine addict defense."  Govt.'s Mot. at 30.  The
government did not provide any legal authority requiring courts
in the D.C. Circuit to assess any particular factors in
determining whether a guilty plea is voluntary.  Nor has the
First Circuit said that the factors identified by the government
are mandatory.  Ferrara, 456 F.3d at 294 (recognizing that
"[w]hile this checklist is useful, experience teaches that each
defendant's decision as to whether or not to enter a guilty plea
is personal, and thus, unique.  Consequently, the compendium of
relevant factors and the comparative weight given to each will
vary from case to case.  The ultimate aim, common to every case,
is to ascertain whether the totality of the circumstances
discloses a reasonable probability that the defendant would not
have pleaded guilty absent the misconduct.").  Nelson's early
admission of guilt and acceptance of responsibility weighs in
favor of finding that his plea of guilty was voluntary.
Nevertheless, if such a consideration were dispositive,
defendants might never be permitted to withdraw their guilty
pleas.  Thus, even though some of the factors, such as Nelson's
plea of guilty and the fact that he was subject to a higher
penalty had he not pled, might weigh in favor of concluding that
his guilty plea was voluntary, the relevant circumstances --
such as the government's misrepresentation, the weight and value
of the undisclosed evidence and its impact on the factual basis
for the plea, and Nelson's early and repeated assertion that he
was meeting Palchak only to acquire methamphetamines, see
Nelson's § 2255 Mot., Nelson Decl. at ¶¶ 17-18, 20 (discussing
Nelson's conversations with his counsel about his reasons for
meeting Palchak in D.C.) -- sufficiently "undermine[] confidence
in the voluntariness of Nelson's plea[,]" Nelson, 2013 WL
5778318, at *8 n.9 (internal quotation marks omitted), to
conclude that Nelson would not have pled guilty but for the
government's misconduct.  See also Miller v. Angliker, 848 F.2d
1312, 1322 (explaining that though the test is an objective one,
"even where counsel would likely adhere to his recommendation of
a plea of guilty or not guilty . . . , if there is a reasonable
probability that but for the withholding of the information the
accused would not have entered the recommended plea but would
have insisted on going to a full trial, the withheld information

government is correct that Nelson's guilty plea is not invalid
merely because it was motivated by his desire to accept the
probability of a lesser penalty. See Brady v. United States,
397 U.S. at 747. A plea, however, can be rendered legally
involuntary by government misrepresentation. See id. at 755-56;
United States v. Pollard, 959 F.2d 1011, 1021 (D.C. Cir. 1992)
("Only physical harm, threats of harassment, misrepresentation,
or promises that are by their nature improper as having no
proper relationship to the prosecutor's business (e.g., bribes)
render a guilty plea legally involuntary." (internal quotation
marks omitted)).

Here, the government concedes that it misrepresented the
completeness of the discovery packet. Nelson, 2013 WL 5778318,
at *7. The government, however, argues that there must be
intentional or knowing "egregiously impermissible conduct" to
support a claim that the defendant's guilty plea is involuntary.
See Govt.'s Mot. at 28; Reply at 15-16 n.14. Yet, the
government provides no legal authority supporting this
distinction, or defining "egregiously impermissible conduct" as
intentional or bad faith conduct. Rather, as the First Circuit
explained in Correale v. United States, where the defendant

---

is material within the meaning of the Brady v. Maryland line of
cases").

argued that his plea was involuntary because the prosecution
promised to make a recommendation of an illegal sentence:

> Nor are the obligations to avoid misrepresentations or
> improper promises limited to good faith efforts.
> Prosecutorial duties affecting the fairness of trials
> have never been so restricted. The same is true of
> the government's role in plea bargaining. In Von
> Moltke v. Gillies, 332 U.S. 708 (1948), a majority of
> the Court agreed that the guilty plea there would be
> void if "a member of the prosecution, gave her,
> however honestly, clearly erroneous legal advice." In
> Santobello, [404 U.S. 257 (1971)], the Court
> reaffirmed that view: "That the breach of agreement
> was inadvertent does not lessen its impact."
> Prosecutorial misrepresentations, though made in good
> faith, even to obtain a just . . . end, are not
> acceptable.

479 F.2d 944, 947 (1st Cir. 1973) (footnote and citations
omitted); Briscoe v. United States, 391 F.2d 984 (D.C. Cir.
1968) ("We assume that there was no lack of bona fides on
anyone's part. This bona fides does not alone negative the
possibility that appellant's guilty plea may not be fairly
retained."). The government has offered no legal authority to
the contrary. Thus, the "inadvertence" of the government's
nondisclosure, and more importantly, of its misrepresentation,
does not change the involuntariness of Nelson's plea. See
Nelson, 2013 WL 5778318, at *8 (concluding that there was a
"reasonable probability that had the government disclosed the
1:44 p.m. e-mail, Nelson would have taken his chances at
trial[.]").

Ultimately, even if Nelson was not generally entitled to
Brady v. Maryland materials before entering his guilty plea,
once the government represented that it had given Nelson a
complete copy of the e-mail exchange between Nelson and Palchak,
the government was obligated to do so.  Cf. United States v.
Russell, 686 F.2d 35, 39 (D.C. Cir. 1982) ("Although it may be
permissible for prosecutors to discuss deportation consequences
with defendants when their understanding of the law is accurate,
the practice cannot be tolerated when the prosecution's advice
is erroneous, no matter how well intended.  The government may
not be required to inform defendants of collateral plea
consequences such as deportation, but it does have an obligation
not to mislead them." (emphasis added) (citation omitted)),
abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356
(2010).  By failing to disclose all of the materials that the
government represented it did disclose, the government
effectively concealed the omitted material.  Cf. Banks v.
Dretke, 540 U.S. 668, 696, 698 (2004) ("A rule thus declaring
'prosecutor may hide, defendant must seek,' is not tenable in a
system constitutionally bound to accord defendants due process.
. . . [The defendant] was entitled to treat the prosecutor's
submissions as truthful.").  The government may not have had the
obligation to speak, but "because the prosecution chose to
speak, and spoke incorrectly[,]" Russell, 686 F.2d at 41, to

Nelson's prejudice, Nelson's plea cannot be considered voluntary. <u>See</u> <u>Nelson</u>, 2013 WL 5778318, at *7; <u>see also</u> <u>Banks</u>, 540 U.S. at 698 ("Prosecutors' dishonest conduct or unwarranted concealment should attract no judicial approbation."). Thus, the government's affirmative misrepresentation to the defense warrants allowing Nelson to withdraw his guilty plea.

<u>CONCLUSION AND ORDER</u>

The government has not demonstrated that it is entitled to relief under Rule 59(e). It has not shown that there was a clear legal error in the October 25, 2013 Opinion, it waived the argument that <u>Brady v. United States</u> should govern the analysis, and, even under <u>Brady v. United States</u>, Nelson's plea was involuntary. Accordingly, it is hereby

ORDERED that the government's motion [60] for reconsideration be, and hereby is, DENIED. The Clerk is directed to notify the Court of Appeals promptly of this disposition.

SIGNED this 11th day of February, 2014.

```
                         /s/
              RICHARD W. ROBERTS
              Chief Judge
```